UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER CURRY,

          Plaintiff,

v.

HARVEST ENERGY SOLUTIONS, LLC,

          Defendant.
_____/

Case No. 15-13981

Paul D. Borman
United States District Judge

OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF NO. 8)

      Plaintiff Christopher Curry filed a single count complaint against Defendant Harvest Energy Solutions, LLC on November 12, 2015 alleging a breach of contract based on an employment contract. (ECF No. 1.) This action is properly before this Court based on diversity jurisdiction. (Compl., at ¶¶ 1-3.) Now before the Court is Defendant Harvest Energy Solutions, LLC's Motion to Dismiss based upon FED. R. CIV. P. 12(b)(6). (ECF No. 8.) Plaintiff filed a timely response and Defendant filed a reply. (ECF Nos. 10 & 11.)

      A hearing on this matter was held on Wednesday June 29, 2016. For the following reasons, the Court will deny Defendant's motion to dismiss.

I. BACKGROUND

      Plaintiff and Defendant entered into an employment agreement (the "Agreement") on November 15, 2015.[1] (Compl., at ¶ 5; Ex. 1, Employment Agr.) The Agreement provided that Plaintiff was to be hired and act as Defendant's president for a four month term, February 1, 2015

---

[1] The Court notes both parties agreed at the hearing that this date is a typographical error in the contract and the date upon which the Agreement was signed was in fact November 15, 2014.

through May 31, 2015. (Agreement, at ¶¶ 2, 4.) The Agreement set forth that Plaintiff was entitled to certain fringe benefits including four weeks of vacation annually, accrued on a pro-rata basis. (*Id*., at ¶ 11(d).) Plaintiff was also entitled to a "$25,000.00 moving allowance payable on the first day of Employee's employment." (*Id*., at ¶ 11(b).) Further, Plaintiff alleges that he was entitled to sick time based on Defendant's corporate policy. (Compl., at ¶ 8.) Pursuant to the Agreement, in the event Plaintiff was terminated from his position for any reason other than for cause, he would be paid $100,000.000 by Defendant "as liquidated damages for his termination" within thirty days of the termination. (*Id*., at ¶ 18.)

Significantly, the Agreement set up a procedure through which the parties could continue the employee relationship past the four month employment term. Upon the "completion of this Agreement," Plaintiff was provided two options, he could choose to terminate his employment relationship with Defendant, or he could "[e]xecute the Amended Operating Agreement for Harvest Energy Solutions, LLC, a copy of which is attached hereto as Scheduled 3, and become a Member/Manager for Employer."[2] (Agr., ¶¶ 19(a),(b).) In the event Plaintiff chose to execute the Amended Operating Agreement,[3] Defendant was provided two options, it could choose to execute the Amended Operating Agreement and accept Plaintiff as a Member/Manager, or it could pay Plaintiff $100,000.00 "and terminate all further relationships with Employee pursuant to Paragraph 18 above." (*Id*., at ¶ 19.)

---

[2] Plaintiff did not attach a copy of the Amended Operating Agreement to the Complaint in this matter. Defendant also did not attach a copy to its motion to dismiss.

[3] The Agreement states "[i]n the event Employee chooses option 18 (b)..." however, it appears this is a typographical error and should read "19 (b)" because paragraph 18 has no subparts.

2

On or before May 31, 2015, Plaintiff advised Defendant that he intended to sign the Amended Operating Agreement and was advised by Defendant that "it would be handled" by Defendant's owners, Mark and Wendy Olinyk, after they returned from the Memorial Day holiday weekend. (Compl., at ¶ 12.) Thereafter, the Olinyks advised Plaintiff "they would contract Defendant's legal counsel to get the process started for execution of the Amended Operating Agreement." (*Id*., at ¶ 13.)

During this time, Plaintiff continued to act as President of Defendant pursuant to the same terms and conditions as provided in the Agreement. (*Id*., at ¶ 14.) Defendant then refused to execute the Amended Operating Agreement and demanded that Plaintiff "agree to a decrease of his promised 2,000 Company Units, a decrease in salary and that he personally guarantee outstanding corporate and personal debts owned by Mark and Wendy Olinyk." (*Id*., at ¶ 15.)

On July 27, 2015, after Plaintiff sought legal counsel regarding Defendant's attempts to amend the Amended Operating Agreement, Defendant terminated Plaintiff's employment without cause. (*Id*., at ¶ 16.) An email sent to Plaintiff on that date stated, "You've taken on an adversarial position by seeking independent legal advice." (*Id*., at ¶ 18.) Defendant thereafter refused to pay Plaintiff's demand for $100,000.00 pursuant to paragraph ¶ 18 of the Agreement for his termination without cause. (Compl., at ¶ 18.)

Plaintiff, now a resident of Tennessee, filed the current action against Defendant on November 12, 2015. Plaintiff alleges that the Agreement was in effect on and after May 31, 2015, and Defendant "owes [Plaintiff] $100,000 because (1) Defendant terminated [Plaintiff's] employment without cause and/or (2) Defendant refused to execute the Amended Operating Agreement as attached to the Employment Agreement when Mr. Curry elected to sign that document

3

and advised Defendant of his intention to do so." (Compl., at ¶ 26.) Plaintiff also claims that he is entitled to $7,957.49 for unpaid relocation expenses and $7,540 in accrued but unpaid vacation/sick time. (*Id*., at ¶¶ 24-25.) Plaintiff claims that despite demands for payment, Defendant has refused to pay the outstanding amounts due under the Agreement and therefore has breached the Agreement.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). To sufficiently state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores*, Inc., 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Treesh*, 487 F.3d at 476 (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Term. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

A plaintiff must provide more than "formulaic recitation of the elements of a cause of action .... Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555 (internal citations omitted). The Sixth Circuit has recently reiterated that "To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the

4

defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible." *Agema v. City of Allegan*, --- F.3d ---, 2016 WL 3349206, at *3 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III. ANALYSIS

Defendant argues that Plaintiff's complaint must be dismissed for failure to state a claim because (1) Plaintiff failed to execute the Amended Operating Agreement and therefore did not satisfy the express condition precedent for becoming a member/manager; and (2) Plaintiff was not entitled to additional compensation under Agreement.

### A. Condition Precedent

This action is before this Court on the basis of diversity jurisdiction, and therefore this Court must apply the law of the forum state – Michigan. *Wonderland Shopping Ctr. Venture Ltd. P'ship v. CDC Mortg. Capital, Inc.*, 274 F.3d 1085, 1092 (6th Cir. 2001) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941); *see also Erie Railroad v. Tompkins*, 304 U.S. 64, 74-77 (1938). Under Michigan law, the primary goal when interpreting a contract is to give effect to the intent of the parties. *Rasheed v. Chrysler Corp.*, 445 Mich. 109, 127 n. 28 (1994); *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63-64 (2000). "This Court examines contractual language and gives the words their plain and ordinary meanings." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 503 (2007). It is well established, that a contract must be construed as a whole with all of its parts harmonized as much as possible. *Smith v. Smith*, 292 Mich. App. 699, 702 (2011). "If the parties' intent is unambiguously clear from the language of the written agreement, the court must enforce the parties' intent as expressed in the writing." *Wonderland Shopping Ctr.*, 274 F.3d at 1092 (citation omitted).

In the present action, Defendant contends that the Agreement contained an express condition precedent, such that Plaintiff was required to execute the Amended Operating Agreement before Defendant was required to either execute the Amended Operating Agreement and accept him as a Member/Manager or terminate the employment agreement and pay Plaintiff $100,000. A condition precedent "is a fact or event that the parties intend must take place before there is a right to performance. If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Park Market, Inc. v. Gronda*, 277 Mich. App. 126, 131 (Mich. Ct. App. 2007) (internal citations omitted). Defendant argues Plaintiff's breach of contract claim fails because Plaintiff does not allege that he ever signed or executed the Amended Operating Agreement. Defendant notes pursuant to FED. R. CIV. P. 9(c) Plaintiff is required to plead the satisfaction of the condition precedent.[4] Additionally, Defendant notes that the Agreement contained a written modification clause that provided: "This Agreement shall not be modified or terminated orally." (Agr., at ¶ 15.)

Plaintiff concedes in his Response that he did not sign the Amended Operating Agreement. (Response, at 1.) Plaintiff argues, however, that he adequately pleaded a breach of contract claim where he alleged that Plaintiff and Defendant elected to modify the condition precedent such that Plaintiff's signature on the Amended Operating Agreement was no longer required. (Compl. ¶¶ 11-13.) Under Michigan law, "parties to a contract are free to *mutually* waive or modify their contract notwithstanding a written modification or anti-waiver clause because of the freedom to contract."

---

[4] Fed. R. Civ. P. 9(c) provides: "In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity."

6

*Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 469 Mich. 362, 365 (2003) (emphasis in original). The Court notes that Plaintiff did not state specifically in his complaint that the parties orally modified the contract. Plaintiff, however, alleged facts in his complaint that support his theory that the parties modified the Agreement. To wit: Plaintiff advised Defendant of his intention to sign the Amended Operating Agreement, but Defendant prevented him from doing so. First, when Plaintiff indicated his intention to sign the Amended Operating Agreement, Defendant advised Plaintiff that "it would be handled" by the owners when they returned from vacation. (*Id*., at ¶ 12.) Second, when Defendant's owners returned from vacation, they said Defendant's lawyers would contact Plaintiff to sign the Amended Operating Agreement and "get the process started." (*Id*., at ¶ 13.) This was all under the understanding that the initial Agreement was operative. Indeed, Plaintiff continued his employment under the Agreement, after it had expired on May 31, 2015. Thus, Plaintiff did not sign the Amended Operating Agreement because the Defendant prevented it. (Compl., at ¶¶ 12-13.) Then, after May 31, 2015, Defendant "refused to execute the Amended Operating Agreement" and demanded Plaintiff agree to change his salary and other terms of the Amended Operating Agreement. (*Id*., at ¶ 15.) Significantly, Plaintiff's continued employment in the role of president and under the original Agreement's terms and conditions past the term of employment set forth in the Agreement evidences a continued commitment by Defendant to that Agreement. (*Id*. at ¶ 14.)

Plaintiff also asserts that he adequately pleaded a breach of contract claim despite an unfilled condition precedent because Defendant waived the condition precedent by causing its failure. Under Michigan law, "when a contract contains a condition precedent, 'there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event....' Where a party

prevents the occurrence of a condition, the party, in effect, waives the performance of the condition." *Harbor Park Market*, 277 Mich. App. at 131-32 (internal citations omitted). Again, the Court notes that Plaintiff did not plead specifically that Defendant "waived" the condition precedent. Plaintiff, however, did allege sufficient facts to support this theory of waiver in his complaint. Indeed, as noted *supra*, Plaintiff alleged that Defendant advised him to wait until Defendant's owners returned from a trip to sign and thereafter he was advised that an attorney was going to "get the process started." (Compl., at ¶¶ 12-13.) A reasonable and plausible inference from these allegations is that Plaintiff did not execute the Amended Operating Agreement because he was dissuaded to do so by Defendant.

To the extent that Defendant argues in its reply briefing that Plaintiff cannot sustain a modification or waiver argument because of the written no-modification clause, that argument is undercut by the Defendant's alleged conduct in this case. The Michigan Supreme Court has recognized that "it is well established in our law that contracts with written modification or anti-waiver clauses can be modified or waived notwithstanding their restrictive amendment clauses." *Quality Prods.*, 469 Mich. at 372. "[A] party alleging waiver or modification must establish a mutual intention of the parties to waive or modify the original contract" and that mutual assent requirement is satisfied through "clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to waive the terms in the of the original contract." *Id*. at 372-73. Here, as examined above, Plaintiff has alleged facts in his complaint that evidence an oral agreement between the parties or affirmative conduct by the parties

that could establish such a modification or waiver.[5] This is all that is required at this stage of the litigation. Indeed, while Defendant argued at the hearing that Plaintiff's allegations were not sufficient to meet the "clear and convincing evidence" standard elucidated in *Quality Products*, this argument is ill suited for motion to dismiss where the Court is charged only with determining whether Plaintiff has alleged sufficient facts to support a plausible claim.[6]

        B.        Other Contract Provisions

Defendant also argues that Plaintiff has failed to allege an adequate contractual basis for his claims for post-termination entitlement to relocation expenses and unused vacation and sick time. Defendant argues that the contract does not state that Plaintiff is allowed a lump sum but an "allowance" of $25,000. Defendant also argues that nothing in the contract states that Plaintiff is entitled to unused vacation or sick time. The Court notes that these claims of entitlement are not pled as separate breaches of contract in the complaint but rather as part of the damages that Plaintiff is entitled to under the Agreement.

The Court finds that Plaintiff has pleaded an adequate entitlement for payment of the $25,000 moving expenses. The contract clause states Plaintiff is entitled to "$25,000 moving allowance payable on the first day of Employee's employment." (Agr., at ¶ 11(b)). Plaintiff is correct in

---

[5] Plaintiff also asserts that his contract claim is viable because he "substantially performed" under the contract. As the Court finds Plaintiff's complaint sufficiently pleads a breach of contract based upon modification or waiver of a condition precedent, the Court declines to examine the merits of this alternative argument.

[6] Plaintiff also requested leave to amend his complaint to cure any alleged deficiency in the pleading. Plaintiff, however, did not attach a proposed amended complaint. To the extent that Plaintiff still seeks to amend his complaint, the Court will consider such a request, under the lenient standard of allowing amendment pursuant to Fed. R. Civ. P. 15, if Plaintiff files a motion to amend with the proposed amended complaint attached.

noting that the Agreement does not state that Plaintiff needed to provide receipts (as Defendant argues) to Defendant to entitle him to receipt of the $25,000. Under a motion to dismiss, the Court must construe all the facts and take all the inferences in Plaintiff's favor - including an ambiguous or poorly worded contract. Further, to sufficiently state a claim, a plaintiff need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Here, Plaintiff has adequately pleaded that he was a party to a contract that entitled him to $25,000 in moving expenses and he did not receive all of the money he was due under the contract. That is enough at this stage of the litigation to proceed.

Similarly, Plaintiff has alleged an adequate basis for unused sick time and vacation time under the liberal pleading standards of Rule 8. Plaintiff appears to allege in his response that it was "his understanding" that he was entitled to that time and that he understood that because of Defendant's "policies." (Pl.'s Resp., at 11-12.) Plaintiff also stated during the hearing that he is entitled to discovery regarding the Defendant's pattern and practice regarding unused sick time and vacation time and his allegations that Defendant failed to pay him for this time is sufficient to allow this claim to move forward.

Defendant relies upon *Miller v. Lanzo Holding Co.*, 03-cv-74954, 2005 WL 1030345 (E.D. Mich. 2005) to argue that "Michigan courts have held that unused vacation days are not included in the context of determining annual compensation" and where there is no contractual basis payment of unused vacation time, the claim has "no basis in the contract or in the law." *Id*. at *8. Defendant's reliance on *Miller* is misplaced for two reasons. First, *Miller* was a decision based upon a motion for summary judgment, not a motion to dismiss testing the adequacy of the pleadings. Second, *Miller* was reversed in relevant part by the Sixth Circuit who held that the plaintiff's

agreement referenced the defendant's policies which in turn allowed payment for unused vacation time. *See Miller v. Lanzo Holding Co.*, 247 F. App'x 682 (6th Cir. 2007).

Here, the issue is whether Plaintiff has adequately pleaded an entitlement to payment of unused sick time or vacation days. Construing all the inference and allegations in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged that he was entitled under the contract and/or the parties' understanding of the contract to unused vacation or sick time. The Court finds that given the Agreement between the parties and the allegations regarding the course of conduct between them, the allegations make it "plausible" that Defendant may be liable for unused vacation time or sick time. *See Agema*, --- F.3d ---, 2016 WL 3349206, at *3 (citation omitted).

## IV. CONCLUSION

For all these reasons, the Court DENIES Defendant's motion to dismiss (ECF No. 8).

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: July 8, 2016

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 8, 2016.

s/Deborah Tofil
Case Manager